Filed 8/13/21  P. v. Butler CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CLIFTON CHARLES BUTLER,<br><br>    Defendant and Appellant. | B301283<br>(Los Angeles County<br> Super. Ct. No. BA105127) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven D. Blades, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

This appeal is from the trial court's summary denial of defendant and appellant Clifton Charles Butler's motion for resentencing under Penal Code section 1170.95.[1]

In 1997, a jury convicted appellant of second degree murder (§ 187, subd. (a)), and found true the allegation that appellant personally used a firearm during the murder (former § 12022.5, subd. (a)). Appellant was sentenced to 15 years to life for murder, plus 5 years for the firearm enhancement.

We affirmed appellant's conviction in 1997. (*People v. Butler* (July 11, 1997, B104143 [nonpub. opn.] (*Butler I*).)[2] When considering the sufficiency of the evidence to support the second degree murder conviction (appellant argued the killing was justified self-defense or unjustified manslaughter), we concluded that "ample evidence supports the jury's finding of second degree murder." We further held that "[t]he totality of the circumstances . . . entitled the jury to draw the reasonable inference that appellant was the aggressor; *that he had intentionally fired the lethal bullet with the intent to kill*; and that he did not do so either in self-defense or under an honest but unreasonable belief in the need for self-defense." (Italics added.)

In 2019, appellant filed a petition for resentencing under section 1170.95, which provides that persons who were convicted under

---

[1] Undesignated statutory references are to the Penal Code.

[2] We grant appellant's request to take judicial notice of the record in *Butler I.*

theories of felony murder or murder under the natural and probable consequences doctrine, and who could no longer be convicted of murder following the enactment of Senate Bill No. 1437 (S.B. 1437), may petition the sentencing court to vacate the conviction and resentence on any remaining counts. (Stats. 2018, ch. 1015, § 1, subd. (f).) Following the appointment of counsel and briefing by the parties, the court summarily denied the petition. Relying on our prior opinion in *Butler I*, the court found that appellant was ineligible for relief as a matter of law, because he was the actual shooter responsible for killing the victim.[3]

In this appeal, appellant contends the trial court erred by relying on the factual statements made in *Butler I* to deny his petition. Utilizing the language appearing in a jury instruction defining second degree implied malice murder (CALJIC No. 8.31), appellant also contends the jury could have convicted him of second degree murder based on the natural and probable consequences doctrine.

We are not persuaded. Appellant's record of conviction establishes that he was the actual shooter who harbored express or implied malice—each supporting a valid theory of second degree murder following the enactment of S.B. 1437. The jury instruction defining implied malice murder did not permit the jury to convict appellant of

---

[3] In light of its conclusion, the court did not consider the People's supplemental opposition challenging the constitutionality of section 1170.95, an issue not raised in this appeal.

murder under the natural and probable consequences doctrine.  We affirm.

## BACKGROUND[4]

Around 2:00 a.m. on November 7, 1994, Kamilah Abdul-Hasan, her sister Nadiya "Dee" Abdul-Hasan, and their cousin Kareemah Brister were in a skating rink parking lot with appellant and Lee Patterson.  Patterson and appellant, members of the Rolling 60's Crips gang, were drinking with Dee.[5]  At some point, Dee got into Patterson's Monte Carlo and sat between Patterson and appellant.  When Patterson drove off, Kamilah and Brister tried unsuccessfully to follow in Kamilah's car.

Around 5:40 a.m., Dee's body was found in an alley three blocks away from appellant's home.  Dee died from a single gunshot wound to the left side of her head.  A moving permit issued by the Department of Motor Vehicles for a 1979 Cadillac was found at the scene smeared with blood.  Investigating officers located the Cadillac at an apartment complex where appellant's former girlfriend resided.

A fresh tire track left in the alley matched the Cadillac's left front tire.  Investigators found human blood and spatter inside the car.  Vinyl covering of the driver's arm rest and all of the rugs inside the vehicle

---

[4]     We recite the factual background from our opinion in *Butler I*, which was made part of the record in this appeal.

[5]     Dee and Patterson were "seeing" each other at the time.

had been removed.  A bullet hole was found inside the front passenger door.

When interviewed by police, appellant admitted "I did it.  I did it;" he also denied that Patterson had anything to do with Dee's death. Appellant stated the shooting was an accident.  According to appellant, he offered to take Dee home after she had gotten into an argument with Patterson.  Wearing blue clothing, Dee got into the Cadillac, and appellant, who was drunk, drove down 54th Street into Bloods' territory.  At some point, appellant spilled his drink.  When he looked up, he saw people standing to the right.  After one male threw up a gang sign, appellant picked up a gun from his lap and tried aiming it at the male who had been pointing a gun back at him.  Warning Dee to duck, appellant fired his weapon, hitting her.  Nervous, appellant dumped Dee's body in an alley.

As relevant here, the court instructed the jury on murder (CALJIC No. 8.10), express and implied malice (CALJIC No. 8.11), transferred intent (CALJIC No. 8.65), premeditated first degree murder (CALJIC No. 8.20), unpremeditated second degree murder (CALJIC No. 8.30), implied malice second degree murder (CALJIC No. 8.31), and involuntary manslaughter (CALJIC No. 8.45).

CALJIC No. 8.31 provided:  "Murder of the second degree is also the unlawful killing of a human being when:  [¶]  1.  The killing resulted from an intentional act,  [¶]  2.  The natural consequences of the act are dangerous to human life, and  [¶]  3.  The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.  [¶]  When the killing is the direct

5

result of such an act, it is not necessary to establish that the defendant intended that his act would result in the death of a human being."

By general verdict, the jury found appellant guilty of second degree murder, and found true the allegation that appellant personally used a firearm during the commission of the offense.

## DISCUSSION

1. *Governing Law: S.B. 1437 and Section 1170.95*

The legislature enacted S.B. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (July 26, 2021, S260598) __ Cal.5th __ [p. 5] (*Lewis*).)

Section 1170.95, as enacted by S.B. 1437, permits individuals who were convicted of felony murder or murder under the natural and probable consequences doctrine, but who could not be convicted of murder following S.B. 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a); *Lewis, supra*, S260598, at p. 5.) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a

request for appointment of counsel, should the petitioner seek appointment.  (§ 1170.95, subd. (b)(2).)

Subdivision (c) of section 1170.95 provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

After briefing in this case, the Supreme Court clarified that subdivision (c) of section 1170.95 describes "only a single prima facie" stage of review.  (*Lewis*, *supra*, S260598, at p. 10.)  Under subdivision (c), "a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one . . . prima facie determination."  (*Id.* at p. 19.)  As previously mentioned, the trial court here complied with this procedure:  only after it appointed counsel and received briefing did it determine that appellant failed to make a prima facie case.

2.    *Analysis*

Appellant contends the trial court erred by relying on the factual statements in *Butler I* to find that he failed to make a prima facie case.

7

In his view, the prior opinion could not be utilized because it did not rule on the issue of his eligibility for relief under section 1170.95.

His contention fails in light of the Supreme Court's decision in *Lewis, supra,* S260598, which held that following the appointment of counsel for the petitioner, "the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under subdivision (c)" of section 1170.95. (*Lewis, supra,* S260598, at p. 32.) As part of the record of conviction, appellate opinions may inform the trial court's prima facie inquiry, allowing the court "to distinguish petitions with potential merit from those that are clearly meritless."[6] (*Id.* at pp. 29, 31, citing *People v. Woodell* (1998) 17 Cal.4th 448, 454–455.)[7]

Here, our prior opinion in *Butler I* establishes that the petition is "clearly meritless": we held that the jury was entitled to conclude that appellant "intentionally fired the lethal bullet with the intent to kill."

---

[6]  The Court in *Lewis* did not specify the circumstances in which a prior appellate opinion may refute the allegations made in a section 1170.95 petition justifying a trial court's ability to make ""a credibility determination adverse to the petitioner."" (*Lewis, supra,* S260598, at p. 31, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 979.)

[7]  We note that the decision appellant relies on, *People v. Cooper* (2020) 54 Cal.App.5th 106 (*Cooper*), review granted November 10, 2020, S264684, was cited with approval in *Lewis*, and actually supports consideration of the record of conviction in this case. (*Cooper, supra,* at p. 125 ["Our opinion should not be read to suggest that, had the trial court appointed counsel for [petitioner] and received briefing from the parties, it could not then rely on the preliminary-hearing transcript to deny the petition for failure to make a prima facie showing"]

8

Our prior opinion thus shows as a matter of law that appellant could be convicted of murder based on express malice, a currently valid theory of murder. (See §§ 188, subds. (a) & (b), 189, subd. (b); Stats. 2018, ch. 1015, § 1.)

Moreover, the jury instructions in appellant's trial demonstrate as a matter of law that appellant was not convicted of murder under the natural and probable consequences doctrine.[8] The jury was instructed on first degree premeditated murder (CALJIC No. 8.20), second degree express and implied malice murder (CALJIC Nos. 8.30, 8.31), and manslaughter (CALJIC No. 8.45). Appellant was convicted of second degree murder, which required a jury finding that he harbored express or implied malice—both theories that remain valid in the wake of S.B. 1437. (See *People v. Soto* (2020) 51 Cal.App.5th 1043, 1057, rev. granted Sept. 23, 2020, S263939 [S.B. 1437 "did not exclude from liability persons convicted of murder for acting with implied malice"].) The jury in this case never received instructions on aiding and abetting or any target crime upon which second degree murder based on the natural and probable consequences doctrine could be predicated. Obviously, the jury could not have convicted appellant based on a theory it never received.

---

[8] Under the natural and probable consequences doctrine, a defendant "'"who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."'" (*People v. Chiu* (2014) 59 Cal.4th 155, 161.)

In sum, because the only two theories on which appellant could have been convicted remain valid following the enactment of S.B. 1437, the trial court did not err by summarily denying his petition for resentencing.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.